Justice Thomas,
dissenting.
Jose Antonio Lopez pleaded guilty to aiding and abetting the possession of cocaine, a felony under South Dakota law. The Court holds that Lopez’s conviction does not constitute an “aggravated felony” because federal law would classify Lopez’s possession offense as a misdemeanor. I respectfully dissent.
I
The Immigration and Nationality Act (INA) provides that “[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable.” 8 U. S. C. § 1227(a)(2)(A)(iii). As relevant to this case, the INA defines an “aggravated felony” as “illicit trafficking in a controlled substance... including a drug trafficking crime (as defined in *61 section 924(c) of title 18).” § 1101(a)(43)(B). And “the term ‘drug trafficking crime’ means any felony punishable under the Controlled Substances Act....” 18 U. S. C. § 924(c)(2).
Lopez’s state felony offense qualifies as a “drug trafficking crime” as defined in § 924(c)(2). A plain reading of this definition identifies two elements: First, the offense must be a felony; second, the offense must be capable of punishment under the Controlled Substances Act (CSA). No one disputes that South Dakota punishes Lopez’s crime as a felony. See S. D. Codified Laws § 22-42-5 (1988). Likewise, no one disputes that the offense was capable of punishment under the CSA. See 21 U. S. C. § 844(a). Lopez’s possession offense therefore satisfies both elements, and the inquiry should end there.
The Court, however, takes the inquiry further by reasoning that only federal felonies qualify as drug trafficking crimes. According to the Court, the definition of drug trafficking crime contains an implied limitation: “any felony punishable [as a felony] under the” CSA. The text does not support this interpretation. Most obviously, the language “as a felony” appears nowhere in § 924(c)(2). Without doubt, Congress could have written the definition with this limitation, but it did not.
Furthermore, Lopez’s suggested addition conflicts with the clear meaning of § 924(c)(2), which extends to both state and federal felonies. Specifically, the definition broadly encompasses “any felony” capable of being punished under the CSA. 18 U. S. C. § 924(c)(2) (emphasis added). “Read naturally, the word ‘any’ has an expansive meaning____” United States v. Gonzales, 520 U. S. 1, 5 (1997); see also Small v. United States, 544 U. S. 385, 397 (2005) (Thomas, J., dissenting) (“The broad phrase ‘any court’ unambiguously includes all judicial bodies with jurisdiction to impose the requisite conviction...” (footnote omitted)). The term “felony” takes its meaning from Title 18, which classifies crimes as felonies when punishable by death or greater than one year of impris *62 onment. § 3559(a). “[A]ny felony” therefore includes both federal and state felonies: The classification depends only on the authorized term of imprisonment. Accordingly, by the plain terms of § 924(c)(2), conduct prohibited by the CSA may qualify as a “drug trafficking crime” if under either federal law or state law the conduct is punishable by more than one year of imprisonment.
This interpretation finds support in other provisions in which Congress placed limits on the types of drug trafficking crimes eligible for consideration. In particular, § 924(c)(1)(A) proscribes the use or possession of a firearm “during and in relation to any ... drug trafficking crime . .. for which the person may be prosecuted in a court of the United States . . . .” (Emphasis added.) See also 18 U. S. C. § 924(c)(5) (2000 ed., Supp. V) (using identical language in proscribing the use or possession of “armor piercing ammunition”). The Court has previously interpreted this language to limit “any . . . drug trafficking crime” to federal crimes. Gonzales, supra, at 5. This language, therefore, acts as a jurisdictional limitation, carving out the subset of federal drug trafficking crimes and making only those eligible for use in §§ 924(c)(1)(A) and 924(c)(5). No similar federal-crime limitation appears in § 924(c)(2). Interpreting the term “drug trafficking crime,” as defined in § 924(c)(2), to reach only federal felonies would render superfluous the federal-crime limitations in these other provisions. See Duncan v. Walker, 533 U. S. 167, 174 (2001) (counseling against interpretations that result in surplus language).[1]
*63 This interpretation also finds support in the INA, which lists “illicit trafficking” and its subset of “drug trafficking crime[s]” as aggravated felonies. 8 U. S. C. § 1101(a)(43)(B). The INA considers these offenses aggravated felonies “whether in violation of Federal or State law . . . .” §1101(a)(43) (penultimate sentence). Thus, by incorporating §924(c)(2)’s definition of “drug trafficking crime,” the INA supports and confirms the conclusion that the definition of “drug trafficking crime” applies to both federal and state felonies.
Moreover, the INA isolates the relevant inquiry to the prosecuting jurisdiction. Section 1227(a)(2)(A)(iii) of Title 8 makes an alien eligible for deportation only upon a conviction for an “aggravated felony.” The conviction requirement suggests that the jurisdiction issuing the conviction determines whether the offense is a felony. This result makes sense. When faced with an actual conviction, it would be unusual to ask, hypothetically, whether that conviction would have been a felony in a different jurisdiction. Furthermore, that hypothetical inquiry could cause significant inconsistencies. For instance, where a State convicts an alien of a misdemeanor drug crime, but federal law classifies the crime as a felony, the misdemeanor conviction would constitute an aggravated felony. This anomaly does not arise when relying on the prosecuting jurisdiction’s classification of the crime.
II
The Court’s approach is unpersuasive. At the outset of its analysis, the Court avers that it must look to the ordinary meaning of “illicit trafficking” because “the statutes in play do not define the term.” Ante, at 53. That statement is incorrect. Section 1101(a)(43)(B) of Title 8 clearly defines “illicit trafficking in a controlled substance,” at least in part, as “a drug trafficking crime (os defined in section 92J)(c) of title 18).” (Emphasis added.) Therefore, whatever else “illicit trafficking” might mean, it must include anything de *64 fined as a “drug trafficking crime” in § 924(c)(2). Rather than grappling with this definition of the relevant term, the Court instead sets up a conflicting straw man definition.
The majority states that the ordinary meaning of “illicit trafficking” involves “some sort of commercial dealing.” Ante, at 53. Because mere possession does not constitute commercial dealing, the Court concludes that Lopez’s possession offense cannot qualify as an “illicit trafficking” offense— or, by implication, a “drug trafficking crime.” Yet even the Court admits that the term “drug trafficking crime” includes federal drug felonies, several of which are mere possession offenses. See 21 U. S. C. § 844(a) (possession of more than five grams of cocaine base, possession of flunitrazepam, and repeat possession offenses). If the Court recognizes, in light of § 924(c)(2), some mere possession offenses under the umbrella of “illicit trafficking,” it cannot reject Lopez’s conviction out of hand. Yet the Court downplays these “few exceptions” in two footnotes, concluding that “this coerced inclusion of a few possession offenses” gives no reason to “override [the] ordinary meaning” of “illicit trafficking.” Ante, at 54, 55, nn. 4 and 6.
The inconsistency deserves more than the Court’s passing reference. By encompassing repeat possession offenses, the term “illicit trafficking” includes far more than “a few” offenses outside of its ordinary meaning. It must include every type of possession offense under the CSA, so long as the offender has had a previous possession offense. If defining “illicit trafficking” to include the entire range of unlawful possession does not provide a “clear statutory command to override ordinary meaning,” ante, at 55, n. 6, I do not know what would.[2]
*65 The Court, however, gives only fleeting consideration to the text of § 924(c)(2) itself. After referencing the phrase “felony punishable under” the CSA, the Court asks “where else would one naturally look” other than the CSA to determine whether a felony qualifies as a drug trafficking crime. Ante, at 55. In response to the Court’s rhetorical question, I suggest that one might naturally look to the conviction itself to determine whether it is a felony. When presented with an actual conviction, one would not expect to look to a hypothetical prosecution to determine whether an offender has committed a felony.
Continuing to avoid the text of § 924(c)(2), the Court instead focuses on what the statute does not say. It concludes that Congress could have expressly referenced state law as in §§ 924(g)(3) and (k)(2). Ibid. The response, of course, is that Congress could just as well have defined a “drug trafficking crime” as “any felony punishable as a felony under the CSA.” Rejoining, the Court resorts to an “instinetiv[e] understanding] ” that the statutory definition actually means “‘felony as defined by the Act.’” Ante, at 56. Instinct notwithstanding, we must interpret what Congress actually wrote, not what it could have written.
Furthermore, the Court’s “instinct” to interpret § 924(c)(2) to mean “felony as defined by” the CSA creates an unnecessary ambiguity in the meaning of “felony.” The CSA defines “felony” as “any Federal or State offense classified by ap *66 plicable Federal or State law as a felony.” 21 U. S. C. § 802(13).[3] Under the Court’s interpretation, that definition seemingly should apply. The Court concludes otherwise but never resolves the ambiguity it creates: It instead explains that “felony” is defined by the CSA as something other than the CSA’s definition of “felony.” Ante, at 56, n. 7. That explanation is, at best, unsatisfying.
After gliding past the statutory text, the Court expresses concern over the fact that the Government’s interpretation allows federal immigration law to turn on varying state criminal classifications. Congress apparently did not share this concern because some definitions of “aggravated felony” explicitly turn on the State’s authorized term of imprisonment, not a uniform federal classification. See 8 U. S. C. §§ 1101(a)(43)(F), (G), (J), (P)-(T). Even the Court finds this variance “not ... all that remarkable.” Ante, at 58. The Court’s real concern therefore has little to do with variations in state law. Rather, it worries that “a state criminal classification [may be] at odds with a federal provision.” Ibid. But, obviously, if a state offense does not qualify under the definitions in § 1101(a)(43), then the offense cannot be an “aggravated felony.” As shown in Part I, supra, though, nothing about Lopez’s offense conflicts with the plain language of § 924(c)(2) as incorporated into § 1101(a)(43)(B). He was convicted of a “felony,” and his offense was “punishable under the” CSA.
The Court also notes apparent anomalies in the Government’s approach. It asserts that, under the Government’s *67 interpretation, a state felony conviction for simple possession of less than 30 grams of marijuana could be an “aggravated felony” even though the INA expressly excludes such an offense as grounds for deportation under 8 U. S. C. § 1227(a)(2)(B)(i). Ante, at 59. The Court’s concern has little basis in reality. Only one State authorizes more than one year of imprisonment for possession of over 20 grams. See Fla. Stat. §§ 893.13(6)(a)-(b), 775.082(3)(d) (2006). A few others classify possession of one ounce (or 28.3 grams) as a felony. See, e.g., Nev. Rev. Stat. §§453.336(l)-(2) (2004), §§453.336(4), 193.130 (2003). The mere possibility that a case could fall into this small gap and lead to removal provides no ground for the Court to depart from the plain meaning of 18 U. S. C. § 924(c)(2).
In fact, it is the Court’s interpretation that will have a significant effect on removal proceedings involving state possession offenses. Federal law treats possession of large quantities of controlled substances as felonious possession with intent to distribute. States frequently treat the same conduct as simple possession offenses, which would escape classification as aggravated felonies under the Court’s interpretation. Thus, the Court’s interpretation will result in a large disparity between the treatment of federal and state convictions for possession of large amounts of drugs. And it is difficult to see why Congress would “authorize a State to overrule its judgment” about possession of large quantities of drugs any more than it would about other possession offenses. Ante, at 59.
Finally, the Court admits that its reading will subject an alien defendant convicted of a state misdemeanor to deportation if his conduct was punishable as a felony under the CSA. Accordingly, even if never convicted of an actual felony, an alien defendant becomes eligible for deportation based on a hypothetical federal prosecution. It is at least anomalous, if not inconsistent, that an actual misdemeanor may be considered an “aggravated felony.”
*68 III
Because a plain reading of the statute would avoid the ambiguities and anomalies created by today’s majority opinion, I respectfully dissent.

 The majority mistakenly contends that my interpretation also renders this language superfluous. Ante, at 58, n. 9. As I have stated, the plain meaning of “drug trafficking crime” includes two categories of felonies— state and federal. For the limiting language in § 924(c)(1)(A) to have meaning, it must exclude one of those categories. As a state felony, Lopez’s possession offense does not fall within the category of federal drug trafficking crimes. Consequently, it is not eligible for use under § 924(c)(1)(A).

 In its discussion of whether possession may constitute “trafficking,” the Court takes its own trip “through the looking glass.” See ante, at 54. “Commerce,” according to the Court, “certainly... is no element of simple possession . . . .” Ibid. Not long ago, the Court found the opposite to *65 be true when interpreting the scope of Congress’ power under the Commerce Clause. See Gonzales v. Raich, 545 U. S. 1, 22 (2005) (concluding that Congress may regulate the mere possession of marijuana as affecting “commerce”). In Raich, the Court fell into the very trap it purports to identify today by “tumfing] simple possession into [commerce], just what the English language tells us not to expect.” Ante, at 54; see also Raich, supra, at 57-58 (Thomas, J., dissenting). The Court’s broadening of the Commerce Clause stands in tension with its present narrow interpretation of “trafficking,” which 8 U. S. C. § 1101(a)(43)(B) explicitly alters to include at least some possession offenses.

 Several Courts of Appeals looked to this definition of “felony” when construing the meaning of “drug trafficking crime.” See, e. g., United States v. Wilson, 316 F. 3d 506, 512 (CA4 2003). Although the Government would clearly prevail under 21 U. S. C. § 802(13), it has conceded that this definition does not apply. This concession makes good sense: The definition of “drug trafficking crime” resides in Title 18, and it is therefore most natural to construe “felony” as used in that title. See n. 1, supra. As discussed above, that definition as well requires that a crime be considered a. felony if the State defines it as a felony.